IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

AUG 1 3 2020

RICK WARREN
COURT CLERK

| | |
|---|---|
| (1) MARK ROYTMAN, an individual, ) | |
| (2) MARINA ROYTMAN, an individual, ) | |
| ) | |
| Plaintiffs, ) | Case No.  37_____ |
| ) | |
| v. ) | |
| ) | Judge |
| (1) CSAA FIRE & CASUALTY INSURANCE ) | |
| COMPANY, A Foreign For-profit Corporation, ) | |
| ) | Attorney Lien Claimed |
| Defendant. ) | |
| ) | |

CJ-2020-3786

## PETITION

COME NOW the Plaintiffs, Mark and Marina Roytman, by and through their attorneys of record and for their cause of action against the Defendant, CSAA Fire & Casualty Insurance Company ("Defendant" or "CSAA"), allege and state as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, Mark and Marina Roytman, are and have been at all times relevant hereto, residents of Oklahoma County, State of Oklahoma.

2. Defendant CSAA Fire & Casualty Insurance Company is a foreign for-profit corporation doing business in Oklahoma County, State of Oklahoma.

3. The acts, occurrences and omissions complained of herein occurred in Oklahoma County, State of Oklahoma.

4. This Court has jurisdiction, and venue is proper in Oklahoma County, State of Oklahoma.

### FACTS COMMON TO ALL CLAIMS

5. Paragraphs 1-4 are incorporated herein by reference.

6. On or around August 16, 2018, one of Defendant's adjusters, Alan Heise ("Heise"),

inspected Plaintiffs' home located at 8309 NW 125th Street, Oklahoma City, 73142 to investigate possible hail damage that the property had suffered.

7. At the time of the inspection, the Plaintiffs had a homeowners' policy of insurance with Defendant.

8. Also present during Heise's inspection was roofing expert Glen Wolfe ("Wolfe"), of Whip Roofing.

9. Heise prepared a brief report detailing the findings of his inspection on August 17, 2018.

10. Heise's report indicated that the damage to Plaintiffs' roof shingles was caused by "a footfall and other mechanical damage. No storm-related damage was found to [Plaintiffs'] shingles."

11. Heise's report also indicated, however, that there was also a loss caused by "hail damage to 7 year old soft metals, window screens and ac covers."

12. Heise determined that the replacement cost value of the damage was $20,525.20, and that, accounting for depreciation, the actual cash value ("ACV") for the loss was $15,770.97.

13. After subtracting the Plaintiffs' $2500 deductible, Heise's report calculated that Plaintiffs' net claim would total $13,270.97 (or $18,024.20 if depreciation is recovered).

14. Plaintiffs subsequently sought a second opinion from roofing expert Glen Wolfe, who was present during Heise's inspection. Wolfe is a certified roofing contractor by the State of Oklahoma.

15. Wolfe prepared his own, much more detailed, report for Plaintiffs after conducting an in-depth inspection of Plaintiffs' property on August 21, 2018.

16. Wolfe opined that Heise's estimate was drastically low; classified Heise's inspection as

"unacceptable" and reported that Heise "was very rude and angry" with Mrs. Roytman during the inspection.

17. Wolfe further opined that the "entire inspection and report was very childish and the field adjusters have chips on their shoulders."

18. Wolfe's report asserted that there was significant damage to Plaintiffs' property, including a "total loss" to Plaintiffs' roof. And contrary to Heise's report, Wolfe noted significant damage likely caused by hail.

19. Wolfe also noted damage to decking, air conditioner condensers, and various other portions of the property. Wolfe estimate the total loss to be in the amount of $143,355.15.

20. When informed of Wolfe's significantly costlier estimate, Defendant claimed, in a letter to Plaintiffs on November 19, 2018, that coverage had only been approved for "the hail damage to [Plaintiffs'] soft metals, guttering, window screens, window frame, and a/c covers."

21. Defendant claimed that the reason its estimate was so low as compared to Wolfe's was that an exclusion to the policy applied, because, in Defendant's view, much of the damage was caused by "[m]echanical breakdown, latent defect, inherent vice, or any quality I property that causes it to damage or destroy itself."

22. This exclusion was not mentioned, however, when Heise conducted his inspection. Defendant only cited the exclusion that allegedly applied after Wolfe completed his inspection, estimate, and report.

23. Further, as detailed in Wolfe's report, many of the repairs that Defendant has agreed to pay for fail to fulfill the manufacturer's guidelines. For example, Wolfe noted that that Defendant refused to pay for the proper number of shingles on the roof, in violation of

manufacturer's guidelines.

24. Wolfe also noted that Defendant failed to approve payment for significant hail damage to valley metals on the roof.

25. Wolfe's report lays out in great detail the significant hail damage to Plaintiffs' property that Defendant refused to cover with no valid reason.

26. Plaintiffs have done everything in their power to provide Defendant with the information needed to effectively process their claim, including providing pictures, receipts, and getting estimates from other contractors, and yet, Defendant has refused to reevaluate certain elements of that claim, has refused to pay the benefits owed under the applicable policy, and has not made reasonable offers to Plaintiffs to compensate them for their loss.

27. Plaintiffs relied on Defendant to properly handle their claims and make payment pursuant to the coverage afforded to them under the applicable policy of insurance. Plaintiffs have made due demand on the Defendant for payment of policy benefits and otherwise met all of the conditions precedent for payment under the policy.

28. Defendant has and continues to unreasonably fail to fully tender benefits under the applicable policy of insurance and continues to delay payment, refuse to evaluate their claim for benefits, and to further deny payment on Plaintiffs' claim.

29. As a result, Plaintiffs have suffered the loss of benefits, attendant financial hardship and pain and suffering.

## CAUSE OF ACTION

### COUNT I:  BREACH OF CONTRACT

30. Paragraphs 1-29 are incorporated herein by reference.

31. Plaintiffs have a homeowners' policy of insurance with Defendant CSAA which includes

4

coverage for the type of loss they suffered including coverage for roof/hail damage and damage to HVAC equipment.

32. Pursuant to the terms of the applicable insurance policy, this is a factual situation wherein the coverage contained in said policy applies.

33. Plaintiffs have requested that Defendant CSAA tender payment under said policy, and Defendant CSAA has failed and refused to do so. Plaintiffs have performed all conditions precedent under the policy.

34. Defendant CSAA has breached its contract of insurance and has refused or neglected to pay Plaintiffs the full value of their damages which is due and owed. Said failure constitutes a breach of contract of said insurance policy.

35. As a direct result of Defendant CSAA's breach of contract, Plaintiffs have suffered the loss of the insurance policy benefits, mental and emotional distress, anxiety, embarrassment, lost wages, medical expenses and financial hardship.

### COUNT II: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

36. Paragraphs 1-35 are incorporated herein by reference.

37. Plaintiffs are insured under a policy of insurance written by Defendant CSAA providing homeowners' insurance coverage at the time of property loss.

38. Plaintiffs requested Defendant CSAA tender any and all applicable benefits under said policy but Defendant has failed and refused to do so. As of the date of this filing, Defendant CSAA has yet to tender the full amounts owed to Plaintiffs.

39. In its handling of Plaintiffs' claim for benefits under the insurance policy, and as a matter of routine practice in handling similar claims, Defendant CSAA breached its duty to deal fairly and in good faith towards Plaintiffs in the following respects:

   a. Failing to fully pay Plaintiffs the benefits they are entitled under the policy of insurance at a time when Defendant knew Plaintiffs were entitled to those benefits;

   b. Withholding payment of benefits knowing that Plaintiffs' claim for benefits was valid;

   c. Unreasonably delaying payment of benefits without reasonable basis;

   d. Refusing to pay Plaintiffs' claims for reasons contrary to the express provisions of the law;

   e. Intentionally and recklessly misapplying provisions of the insurance policy and looking for ways to avoid paying some or all of Plaintiffs' claims;

   f. Failing to adopt and implement reasonable standards for the prompt investigation, evaluation and handling of Plaintiffs' claim arising under its policies, including Plaintiff's;

   g. Unreasonably delaying Plaintiffs' claim and putting the burden of investigation onto Plaintiffs; and

   h. Failing to evaluate various aspects of Plaintiffs' claim and instead automatically denying those claims without any investigation or evaluation; and

   i. Failing to attempt to act in good faith to effectuate a prompt and fair settlement of Plaintiffs' claims.

40. As a direct result of Defendant CSAA's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered the loss of the insurance policy benefits, mental and emotional distress, anxiety, embarrassment, and financial hardship.

41. Plaintiffs have retained an attorney to prosecute this action and are thus entitled to a

reasonable attorney fee as well as the costs expended in pursuit of this litigation.

## COUNT III – PUNITIVE DAMAGES

42. Paragraphs 1-41 are incorporated herein by reference.

43. The intentional, wanton and reckless conduct of Defendant in disregard of Plaintiffs and others is, and was, conducted with full knowledge, in that Defendant knew, or should have known, of the severe adverse consequences of its actions upon Plaintiffs and others.

44. Such actions and or inactions were not only detrimental to the Plaintiffs but to the public in general.

45. Defendant has acted intentionally, maliciously and in reckless disregard for the rights of the Plaintiffs. As a result, the Plaintiffs are entitled to recover punitive damages against the Defendant for these actions.

**WHEREFORE**, based on the foregoing, Plaintiffs pray that this Court grant the relief sought including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand ($75,000.00), reasonable attorney fees, all applicable pre- and post-judgment interest, costs and all other relief deemed appropriate by this Court.

Respectfully submitted,

**SMOLEN & ROYTMAN, PLLC**

_____
Daniel E. Smolen, (OBA#19943)
Lauren G. Lambright, (OBA #22300)
701 South Cincinnati Avenue

Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 (Fax)
*Attorneys for Plaintiff*